LYON *et al.* v. COLONIAL UNITED STATES MORTGAGE CO.

[91 South. 708. No. 22485.]

SUBROGATION. *Doctrine cannot be invoked by one required to pay a debt because of his own wrongful act.*

Subrogation cannot be invoked by one who has been required to pay the debt of another, when his being required to pay the debt was caused by his own wrongful conduct and to require the debtor to pay him would be, under the peculiar circumstances of the case, unjust to the debtor.

APPEAL from chancery court of Humphreys county.

HON. E. N. THOMAS, Chancellor.

Bill by the Colonial United States Mortgage Company against A. A. Lyon and others. Decree for plaintiff, and the defendants appeal. Decree reversed in so far as it affects appellants, and bill dismissed as to them.

*Mortimer & Sykes,* for appellant.

Inasmuch as appellee was a volunteer, it is not entitled to the benefit of the equitable doctrine of subrogation. Volunteer Not Entitled to Subrogation. *Morris* v. *Lake,* 9 Smedes & Marshall, 524. We do not mean that the sheriff may voluntarily advance his money (when not liable for the judgment) and claim substitution. *Staples* v. *Fox,* 45 Miss. 681; *Slaton* v. *Alcorn,* 51 Miss. 75.

In *Slaton* v. *Alcorn, supra,* the court asks the following questions, which are very pertinent to the case at bar: "Does the appellant bring himself within the scope of the doctrine?" Was he under a secondary obligation to pay the debt for which another was primarily bound? Was he compelled to lay out the money in order to protect his own right from being injured or entirely swept away? He was under no personal obligation to satisfy the judgment out of his own money, nor could the creditor have used the judgment to his own individual prejudice."

We make the further statement here that appellee was not only a volunteer in superseding the collection of these rents, but it was an intermeddler. There is no charge in the bill that the collection of these rents on the part of the heirs was superseded by appellee at the request of Lyon Brothers, the parties primarily liable, but on the contrary the bill states that Lyon Brothers paid the same to Mrs. Watson during the pendency of the suit. This being so, the corollary from *Trust Company* v. *Peters,* 72 Miss. 1070, would apply; viz., that: "One who advances money which is to be used in the payment of a prior security, but not at the instance of the debtor, is a stranger or intermeddler

in his affairs." Sheldon on Subrogation, 3 Pom. Eq. Jur., sec. 1212; *Trust Company* v. *Peters,* 72 Miss. 1070; 18 So. 497, 30 L. R. A. 829; *Good* v. *Golden,* 73 Miss. 95, 19 So. 100; *Staples* v. *Fox,* 45 Miss. 681; *Howell* v. *Bush,* 54 Miss. 445; Sheldon on Subrogation, secs. 3, 240, 241, 245, and 246. It makes no difference that money loaned is for the purpose of paying off a lien if that bare fact be all, citing Sheldon on Subrogation, sec. 243; *Gardenville Assoc.* v. *Walker,* 52 Md. 452; *Good* v. *Golden,* 73 Miss. 95.

To the same effect are the following: A stranger, within the meaning of this rule, is not necessarily one who has nothing to do with the transaction out of which the debt grew; any one being under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer. *Suppiger* v. *Garrels,* 20 Ill. App. 625, quoted and approved in *Traders Bank* v. *Myers,* 3 Kan. App. 636, 44 Pac. 292, 295; 37 Cyc. 378. See Voluntary Payment, 37 Cyc. page 375. "A. In general, subrogation is the substitution of another person in the place of the creditor, so that the person in whose favor it is exercised succeeds to the right of the creditor in relation to the debt." 37 Cyc. 363, 374, 388, 390; 25 R. C. L., 1317, 1322.

Generally speaking, however, those who will be granted subrogation may be divided into four classes: First, those who pay the debt of another in the performance of a legal duty imposed by contract or the rules of law; second, those who pay the obligation of another for the purpose of protecting their own right or interests; third, those who pay the debt of another under an agreement for subrogation to the right of the creditor; fourth, those who pay on the invitation of the public and whose payment is favored by public policy. 25 R. C. L., 1323.

A stranger or volunteer, as those terms are used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt, and whose property is not charged with the payment thereof and cannot be sold therefor. 25 R. C. L., sec. 11, 1325, citing *Mortgage Co.* v. *Peters,* 72

Miss. 1058, 18 So. 497, 30 L. R. A. 829. Who is a stranger or volunteer? Ann. Cases 1912, p. 1190 note.

*J. H. Watson,* for appellee.

The second assignment is based upon the proposition that the decree was erroneous because the creditors to whose rights appellee sought to be subrogated were not parties to the cause and in support thereof counsel cite the case of *Doty* v. *Timber Co.,* 114 Miss. 882. An examination of this case will disclose the fact that the question of subrogation did not arise and that the sentence quoted by counsel from the opinion in that case was, *obliter dictum,* pure and simple. I concede that the right of subrogation cannot be enforced in proceedings to which those whose equities are affected are not parties, but I deny that the persons to whom the chancery court of Holmes county gave appellee's money to pay a debt for which appellants were primarily liable were necessary or even proper parties. They had admittedly received everything that was due them; had no equities to be affected; and appellee's right to subrogation did not depend on their consent. It was a matter about which they did not even have to be consulted. They had a legal demand against appellants which the court had paid with appellee's money but had no conceivable interest in appellee's effort to get its money back by invoking the equitable doctrine of subrogation. No one can be a necessary party to a proceeding in the result of which he has not the slightest interest either legal or equitable; and I challenge, gentlemen, to show that Mrs. Vinson, Mrs. Foy, and Mr. Watson have or had any interest that is affected or could by any possibility be affected, directly or indirectly, by the decree in the case of *appellee* v. *Lyon Bros.*

SMITH, C. J., delivered the opinion of the court.

The appellee exhibited an original bill of complaint in the court below against the appellants and two other

parties, from which the following facts appear: In March, 1912, J. H. Watson and his wife, Fannie M. Watson, executed and delivered to the complainant a mortgage on certain described lands to secure the payment of an indebtedness due by them to the complainant. J. H. Watson died shortly thereafter leaving a will by which he devised the land to his widow. Watson left surviving him three children by a former marriage who in October, 1912, filed a suit in the chancery court of Holmes county against Mrs. Fannie M. Watson and the complainant herein, setting forth that the land was formerly owned by their now deceased mother, whose sole heirs were themselves and their father, J. H. Watson; that they own a three-fourths interest and Mrs. Fannie M. Watson by virtue of their father's will owns a one-fourth interest in the land; that three-fourths of the proceeds thereof be paid to them, and one-fourth to the mortgage company or so much thereof as would be necessary to discharge its mortgage, and the remainder, if any, to Mrs. Fannie M. Watson; that the suit for partition was heard on bill, answer of the defendants therein, and proof, resulting in a decree as prayed for, from which an appeal was prosecuted by Mrs. Watson and the mortgage company to the supreme court, they executing an appeal bond, one of the conditions of which was that they would "pay such costs, damages, and rents as shall be awarded against them," etc. The decree appealed from was affirmed by this court in January, 1915. *Watson* v. *Vinson*, 108 Miss. 600, 67 So. 61. Shortly after the filing of the bill for partition, Mrs. Watson leased the land to A. A. and L. H. Lyon, the appellants herein, doing business under the firm name of Lyon Bros., for a term of three years beginning January 1, 1913, for an annual rental of one thousand, seven hundred and thirty-six dollars and seventy-two cents, for which three promissory notes were given. These notes were collected by Mrs. Watson. The lessees knew when the lease was made of the claim of the Watson children to a three-fourths undivided interest in the land and of the institution by them of the suit for a

partition, and one of the stipulations of the lease was that it was made "subject to the alleged rights of heirs to said section 34 now in litigation in the chancery court of Holmes county, Miss., and not yet passed on by said court." When the land was sold under the decree for a partition, the rents therefor for the Watson children's three-fourths interest therein was decreed, on their petition, to be paid out of the one-fourth of the proceeds of the land set apart for Mrs. Watson and the mortgage company. The prayer of the bill is that the complainant, the Colonial United States Mortgage Company, be subrogated to the right of the Watson children to collect from Lyon Bros. three-fourths of the rent agreed to be paid by them for the land for the years 1913 and 1914. The appellants, Lyon Bros., answered practically admitting the allegations of the bill but denying the complainants' right to a recovery. The cause was heard on bill and answer, and a decree was rendered in accordance with the prayer of the bill, from which this appeal is taken.

" 'Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities.' Words and Phrases, vol. 7, p. 6722. "The doctrine is one of equity and benevolence, . . . and its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice.' 37 Cyc. 363." *Robinson* v. *Sullivan,* 102 Miss. 596, 59 So. 847.

It "is a creation of the court of equity, and is applied, in the absence of an agreement between the parties, where otherwise there would be a manifest failure of justice." *Trust Co.* v. *Peters,* 72 Miss. 1058, 18 So. 497, 30 L. R. A. 829.

It will not be applied unless the applicant's cause is just and innocent persons will not be injured thereby. *Emmett* v. *Thompson,* 49 Minn. 386, 52 N. W. 31, 32 Am. St.

Rep. 566; 25 R. C. L. 1314, 99 Am. St. Rep. 574, note. In order for the doctrine to be applied here, it must appear that the appellee has been required to pay a debt for which the appellants are primarily liable and which in equity and good conscience should be discharged by them.

The bond because of the making of which the appellee was compelled to pay the rent on the land leased by the appellants was executed in a litigation in which the appellee was attempting, as this court has decided, to wrongfully deprive Mrs. Watson's cotenants of their interest in the land, and the collection of the rent by Mrs. Watson was not only made possible by this wrongful conduct on the part of the appellee, but the appellants, in so far as the appellee is concerned, were justified in paying the rent to Mrs. Watson, for it had joined with her in, and one of the purposes for which the bond was executed was to maintain, her claim of ownership of the land. To force the appellants to again pay the rent in order to relieve the appellee from the consequences of its own wrong would be inequitable.

The decree of the court below will be reversed in so far as it affects the appellants and the bill as to them will be dismissed.

*Reversed and dismissed.*